## WEST *v.* HIS CREDITORS.

Where the demand in one case is made by a party in his own right, and in another as execu-
tor, the demand not being between the same parties in the same capacity, a judgment in
the first case cannot have the force of *res judicata* in the second.

| | |
|---|---|
| 3 | 529 |
| 108 | 605 |

| | |
|---|---|
| 3 | 529 |
| 109 | 288 |

| | |
|---|---|
| 3 | 529 |
| 111 | 197 |

| | |
|---|---|
| 3 | 529 |
| f125 | 722 |

WEST
v.
CREDITORS.

The exception *rei judicatæ* is *stricti juris*; and if there should be any doubt as to the identity of the things claimed, or of the persons claiming them, it cannot be maintained.

In an opposition by one who had been a surety on a custom-house bond, to a tableau of distribution presented by the syndics of the principal, the opponent may show by whom a judgment rendered on the bond had been paid, notwithstanding a statement in the marshal's return that it had been paid by a different person. *Per Curiam:* The statement by the marshal formed no part of the return required by law; and, if it had formed a part, could not take away the right to prove that the opponent had refunded the amount, or a part of it.

A surety on a custom-house bond, who paid its amount to the United States while the Code of 1808 was in force, became thereby subrogated to the rights of the United States, against the principal, to priority of payment and interest out of the property of the principal. B. 3, tit. 3. art. 151.

Under the Code of 1808, b. 3, t. 3, art. 151, subrogation took place of right for the benefit of one who, being himself a creditor, paid another creditor whose claim was preferable to his own.

Prescription against the creditors of an insolvent is suspended by a *cessio bonorum*. The property ceded by the insolvent is the common pledge of his creditors; and that pledge continues as long as there are assets to be divided.

APPEAL. from the Fifth District Court of New Orleans, *Buchanan*, J. H. D. *Ogden*, for the appellant. The plea of *res judicata* cannot be supported. The demand now made is not in the same capacity as that made in the former case. 2 Delvincourt, note 4 to p. 197. Pothier, Oblig. no. 198. 5 Toullier, no. 548, 492. 6 Mart, N. S. 252. 1 Ann. 31. Rogron, on Code Comm. art. 513. *Cloutier* v. *Lecomte*, 13 Mart. 481. A sheriff's or marshal's return may be contradicted. 13 La. 342. 1 New Hamp. Rep. 68. 4 Rand. 189. *Rochelle* v. *Cox*, 5 La. 287. *Singleton* v. *Smith*, 4 La. 433. Comyn's Dig. vol. 7, p. 2859 *verbo* Return. 8 La. 423.

The United States were entitled to priority of payment and interest at the rate of six per cent per annum. U. Laws, pp. 147, 242, and 630. 5 ¿ Peters, 183. 6 Peters, 29. 9 La. 268.

*West* was indebted to *Duplessis* before the payment of the latter, and *Duplessis* being at the time a creditor, and paying another creditor, whose claim was preferable to his, was subrogated of right. C. C. 2157. C. N. 1250. Rogron, C. C. Expliqué, note to art. 1251. Toul. vol. 4, no. 140.

G. B. *Duncan*, for the syndic, contrâ, contended that the matter in contest was *res judicata*, citing *Hunstock* v. *His Creditors*, 11 La. 571.

The judgment of the court was pronounced by

ROST, J.* In the case of *West* v. *His Creditors*, 1 Annual R. 365, we refused to allow *François Duplessis*, Jr., a claim of $2368, alleged to have been paid by him to the United States for a custom-house bond of the insolvent, on which he was one of the sureties. The claim was rejected on the ground that the evidence adduced in support of it, if admissible, went to show that the payment had been made by the father of the claimant. The funds then in the hands of the syndic were ordered to be distributed according to the tableau annexed to the decree. Other assets of the insolvent having since been received, the syndic filed a tableau of distribution in conformity with that decree. *François Duplessis*, Jr., in his capacity of testamentary executor of his father, opposed the homologation of the tableau, claiming to be paid by priority to the other creditors, the aforesaid sum, with interest at six per cent per annum since it was paid by his father. The attorney of absent creditors filed a plea of *res judicata*, and the syndic otherwise opposed the claim, and has pleaded prescription in this court. The opposition was dismissed, and the executor has appealed.

The plea of *res judicata* cannot be sustained. The demand in this and the

* EUSTIS, C. J. did not sit on the trial of this case, being interested. The opinion read by ROST, J., was pronounced on the 22 of November, 1847,

former case is not 'between 'the same parties, in the same capacity. In the first case, the opposing creditor claimed in his own right; he now claims in right of his father, whose legal representative he is. The exception of the thing adjudged is *stricti juris*,.and if there should be doubt.as to the identity of the things claimed, or of the persons claiming them, it cannot be maintained. 5 Toullier, no. 492. *Cloutier* v. *Lecomte*, 3 Mart. 481. In these cases, there is no doubt that the party claiming is not the same.

On the merits, we are of the opinion that evidence was admissible to show by whom the judgment rendered on the .custom-house bonds had really been paid, notwithstanding the declaration in the marshal's return that it was satisfied by *Abner L. Duncan*. This declaration was no part of the return required by law; and, if it had been, the opponent had the right to prove that his testator subsequently refunded one-half of the amount. The evidence satisfactorily establishes that fact. The United States were entitled to priority over ordinary creditors, and to interest.at the rate of six per cent per annum. *Duncan*, being one of the parties to the bond, became subrogated to the rights of the United States against *West*, when he paid the judgment. Code of 1808, p. 290, article 151.

*François Duplessis, Jr.* subsequently refunded to *Duncan* the sum now claimed, and his right to priority depends upon the 'relations existing at the time between him and *West*, as creditor and debtor.

On the 16th of May, 1818, *West* acknowledged himself indebted to 'him 'in the sum of $5400, and gave him a mortgage to secure that amount. That debt matured on the 16th May, 1819. On the 1st February of that year, *West* had applied for a respite, which was subsequently changed into a .cessio bonorum. On the 1st June following, *Duplessis*, proceeding under a subrogation from a creditor who held the first mortgage on the property mortgaged to him, caused that property to be sold, and out of the proceeds of the sale satisfied this mortgage, and received $966 25 on his own, thus remaining an ordinary creditor of *West* to the amount of $4433 75, for which sum he was placed on the former tableau of distribution. On the 5th November, 1819, when he paid *Abner L. Duncan* the sum claimed, he was an ordinary creditor of *West*, and *Duncan's* claim, being entitled to priority, was preferable to his. Under the laws then in force, subrogation took place of right for the benefit of those who, being themselves creditors, paid another creditor whose claim was preferable to theirs. Code of 1808, p. 290, article 151.

This claim is not barred by prescription. The assets left by an insolvent are the common pledge of his creditors. That pledge continues as long as there are assets to be divided.

We are of opinion that the opposition should have been sustained.

It is, therefore, ordered that, the judgment appealed from be reversed, and that the succession of *François Duplessis, Sr.*, recover from the syndic of the insolvent, *John K. West*, the sum of $2368 40, with interest at the rate of six per cent per annum, from the 5th of November, 1819, till paid, to be paid by priority, and in due course of administration. It is further ordered that, the tableau filed be amended so as to conform with this decree, and that the costs in both courts be paid out of the assets in the hands of the syndic.

WEST
*v.*
CREDITORS.

## SAME CASE—ON A RE-HEARING.

Where there is doubt upon a question of *res judicata*, the party against whom the plea is set up should have the benefit of that doubt.

A judgment homologating a tableau of distribution presented by the syndic of an insolvent, and declaring that it shall stand " as the final tableau of distribution of the funds in the hands of the syndic," on which a creditor, who opposed the homologation, was placed as an ordinary creditor, cannot be pleaded as *res judicata* to an opposition by the same creditor, to a second tableau, for the distribution of other funds, on which he claimed to be placed as a privileged creditor for the same debt. The homologation has the force of *res judicata* only as to the funds proposed to be distributed by the first tableau.

*Horner*, for the absent creditors, prayed for a re-hearing, contending that a judgment of homologation, so far as it settles the rank and privilege of the creditors is final, and must have the authority of the thing adjudged, citing 14 La. 242, and the cases there quoted. *H. D. Ogden*, argued on the same side.

The judgment of the court on the re-hearing was pronounced by

SLIDELL, J. We adhere to the decree rendered by us at the last November term. On the former tableau a sum of $18,681 47, a collection upon the mexican claim, was distributed. Since that tableau, a further amount has come from the same claim into the syndics hands, the distribution of which is the subject of the present tableau. Where there is doubt upon a question of *res judicata*, the party against whom the plea is set up should have the benefit of that doubt. In *Lang* v. *His Creditors*, an examination of the record will show that the proceeds of moveables upon which the creditor claimed his privilege on the second tableau, were in the syndic's hands and expressly figured upon the first tableau. It is conceded that the appellant is estopped as to the monies in the syndic's hands, distributed by the first tableau ; but we cannot consider him as barred by the former decree as to those new monies now proposed to be distributed. If we look to the bankrupt law of the United States and of England, we find a creditor protected not only to that extent, but even beyond it. This is a strong argument to support the equity of the appellants' pretensions. We are not aware that any express provision of our insolvent laws shut out this equity. It is also to be observed that the decree of this court, (1 An. 365,) uses limited expressions : " It is ordered that the tableau annexed to this decree and made in conformity with the principles of this decision, stand as the final tableau of distribution of *the funds in the hands of the syndic*," &c. The amended tableau made by this court distributed the amount of $18,681 47, treating that as the fund.

It is therefore ordered that the decree rendered in this cause by this court on the 22d November, 1847, *supra*, p. 530, remain undisturbed.

EUSTIS, C. J. I did not sit in this case, having a small pecuniary interest depending on the result. A re-hearing has been granted, and the case has been re-argued in writing. *Rost*, J. concurred with my brethren in thinking that the decision ought to stand. He being absent, I represent his opinion, and concur in that of the other judges, under the reservation of my own. I adopt this clause because the parties have a right to have the case terminated, which has been for a long time litigated, and the subject has been thoroughly investigated and discussed, and it is not probable that any advantage would be attained by further delay.