544 So.2d 583 (1989)
Dennis COMBS
v.
The HARTFORD INSURANCE COMPANY, Terry Spitzer Buick, and Valerie Ledig.
No. 88 CA 0702.
Court of Appeal of Louisiana, First Circuit.
May 16, 1989.
Rehearing Denied June 23, 1989.
*584 Clarence T. Nalls, Jr., Baton Rouge, for plaintiff-appellant Dennis Combs.
Robert D. Hoover, Baton Rouge, for defendant-appellee The Hartford Ins. Co., Terry Spitzer Buick, and Valerie Ledig.
*585 Before CARTER, LANIER and LeBLANC, JJ.
CARTER, Judge.
This is a suit for damages arising out of an automobile accident. The defendants stipulated liability, and the case went to trial on quantum. A jury awarded plaintiff $6,800.00 in damages. Plaintiff appeals.

FACTS
Dennis Combs (plaintiff) was injured on March 8, 1986, when an automobile owned by Terry Spitzer Buick, insured by Hartford Insurance Company, and driven by Valerie Ledig ran into the rear of his car. The defendants admitted liability, and after a jury trial, plaintiff was awarded $1,500.00 for past and future physical pain and mental suffering, $2,300.00 for past medical expenses, and $3,000.00 for past lost wages for a total award of $6,800.00.
Plaintiff moved for a JNOV which was denied. He then filed a motion for additur and, alternatively, for a new trial, which was also denied.
Subsequently plaintiff filed this devolutive appeal, alleging the following assignments of error:
1. The trial court erred in allowing into evidence certain photographs of plaintiff.
2. The trial court erred in refusing to allow into evidence the results of plaintiff's CT scan, the testimony of plaintiff's physician witnesses relative to plaintiff's condition at time of trial, and the testimony of plaintiffs former employer.
3. The trial court erred in denying plaintiff's motion for additur or in the alternative a new trial.
4. The jury abused its discretion in awarding plaintiff only $3,000.00 in past lost wages and only $1,500.00 for pain and suffering.

PHOTOGRAPHS

(Assignment of Error No. 1)
Plaintiff contends that the trial court erred in admitting into evidence certain photographs of plaintiff taken by defendant depicting plaintiff engaging in certain physical activities. Plaintiff filed a motion in limine to exclude the photographs, which was denied. Plaintiff noted his objection for purposes of appeal.
Plaintiff now contends that the photographs were not authentic or relevant and had no probative value. Plaintiff's main complaint relative to the authenticity of the pictures is that another person who does not appear in the pictures was present when the pictures were taken. Plaintiff admitted that he was the person shown in the photographs and that he was engaged in the activities depicted. Plaintiff contends that medical testimony presented at trial proved that the activities shown in the photographs could have been performed by a person with injuries such as his. Nevertheless, plaintiff contends the photographs were prejudicial and should not have been admitted into evidence.
A review of the record reveals that during the trial, plaintiff's counsel began questioning plaintiff relative to the photographs. The trial judge pointed out that the photographs had not been introduced into evidence and asked if plaintiff's counsel wished to introduce them. Plaintiff's counsel answered "yes, sir." Plaintiff then continued to use the photographs to present his case in chief. Plaintiff may not now assign error to the inclusion of his own evidence. Hope v. Gordon, on rehearing, 186 La. 697, 173 So. 177 (1937); Jenkins v. Salmen Brick & Lumber Co., 120 La. 549, 45 So. 435 (1908). See also Sparacello v. Andrews, 501 So.2d 269 (La.App. 1st Cir.1986), writ denied, 502 So.2d 103 (La.1987).
This court in Acosta v. Lea, 56 So.2d 201 (La.App. 1st Cir.1952), held that an objection to certain testimony of a witness was waived when the objecting party called the witness and proceeded to examine her on the subject matter of the objectionable testimony without reserving his rights under the previous objection. In quoting Hope v. Gordon, supra, the court reasoned that:
A party may, by his acts or omissions, waive or be estopped to make objections to the admission or exclusion of evidence.

*586 Such waiver or estoppel may arise from failure to object, from acts done or omitted before evidence is offered, as by failure to object to previous similar evidence, or from some affirmative act done after ruling on the evidence. [56 So.2d at 201-202].
Accordingly, this assignment of error has no merit.

EXCLUSION OF EVIDENCE

(Assignment of Error No. 2)
Plaintiff contends that the trial court erred in refusing to allow into evidence the results of plaintiff's CT scan, certain testimony of plaintiff's physician witness, and the testimony of plaintiff's former employer.
The trial judge has discretion in conducting a trial. The judge is required to do so in an orderly, expeditious manner and to control the proceedings so that justice is done. LSA-C.C.P. art. 1631. The judge's discretion includes the order of presentation of witnesses, LSA-C.C.P. art. 1632, as well as the admissibility of a witness's testimony. LSA-C.C.P. art. 1631.
In order to insure an orderly disposition of each case and to avoid surprise and delay, a trial judge may require the parties to participate in a pre-trial conference. The pre-trial conference results in a pre-trial order which controls the subsequent course of the action unless modified at the trial to prevent manifest injustice. LSA-C.C.P. art. 1551. The theories inherent in the pre-trial procedure, to avoid surprise and allow orderly disposition of the case, constitute sufficient reasons for allowing the trial judge to require adherence to the pre-trial order. Brown v. Hawkins, 244 So.2d 896 (La.App. 1st Cir.1971), writ refused, 258 La. 572, 247 So.2d 393 (1971). A pre-trial order may only be modified at trial to prevent manifest injustice. This Court upheld the admission of evidence during trial despite the fact that such evidence was not listed on a pre-trial order where the defendant had actual knowledge of the evidence and when the defendant had an opportunity to rebut the evidence and when no great surprise or prejudice was demonstrated. Recherche, Inc. v. Jewelry Jungle, Inc., 377 So.2d 1329 (La.App. 1st Cir.1979), writ denied, 379 So.2d 254 (La.1980).
CT SCAN
In the instant case, plaintiff had a CT scan performed two days before the trial. The exhibit was not listed on the pre-trial order, and no notice was given to opposing counsel that the CT scan would be used at the trial or offered into evidence. Plaintiff attempted to introduce the results of the CT scan during the testimony of Dr. Marvin D. Clifton, an expert in neurological and clinical medicine. Dr. Clifton first saw plaintiff on June 30, 1986. Dr. Clifton's initial impression was the plaintiff had a severe cervical neck sprain and a possible ruptured disc. Because of these findings, Dr. Clifton advised plaintiff to have a CT scan. However, the CT scan was not performed until two days before trial. Defendants objected to the introduction of the results of the test on the grounds that Dr. Clifton did not perform the test. Plaintiff then attempted to introduce the CT scan on the grounds that Dr. Clifton used the test in his treatment of plaintiff. However, Dr. Clifton testified that he had not used the test in his treatment of plaintiff. In fact, Dr. Clifton had not seen plaintiff subsequent to the completion of the test. As the plaintiff failed to lay a proper foundation for the inclusion of the CT scan, the trial judge properly refused to admit the CT scan into evidence.
TESTIMONY OF PLAINTIFF'S FORMER PHYSICIAN
Plaintiff sought to question Dr. Robert J. Hall, who last examined plaintiff on April 18, 1986, relative to plaintiff's medical symptoms and diagnosis on the day of the trial. After an objection by defendant, the trial court limited the scope of Dr. Hall's testimony to the date he last saw plaintiff. Plaintiff then attempted to pose a hypothetical question that would supply a current diagnosis of plaintiff's injury. Defendant's objections to the question were *587 sustained. Plaintiff now contends that the failure to allow Dr. Hall to give his response denied plaintiff a fair trial and an opportunity to fully present his case and also "denied the jury the necessary information to fully make up its mind as to the extent of plaintiff's injury." The relevant part of the trial transcript reads as follows:
BY MR. NALLS:

* * * * * *
Q. In your expert opinion, Doctor, if a patient comes to you and he has a and you diagnose his case as being a cervical sprain or strain and he has pre-existing arthritic conditions and he does not respond to treatment and has not responded for over a year period of time, what diagnosis could you come up with?
Mr. Hoover: Your Honor, I object to that. He hasn't seen him since April 18, '86; how can he diagnose his condition now.
Mr. Nalls: That's a hypothetical question that I'm asking.
The Court: I'm not going to let him answer it though. I sustain the objection. I'll let him testify as to all his findings on the last time he saw him.
BY MR. NALLS:
Q. Okay. Well, Doctor, let me ask you this. As of the last time that you saw Mr. Combs, would it be surprising to you that he's still having the conditions that you found when you examined him?
Hypothetical questions posed to expert witnesses should not be based on unproven facts. Brown v. Aetna Casualty & Surety Company, 96 So.2d 357 (La.App. 2nd Cir.1957). The question posed to plaintiff's expert herein was based entirely on facts relative to plaintiff's specific physical condition on the date of trial. The question sought to elicit from Dr. Hall a conclusion in the form of a diagnosis of plaintiff's current condition, although Dr. Hall had not recently treated plaintiff. In order to justify the diagnosis, the witness would have had to assume that certain unproven facts were true without evidence offered to support these facts. See Lambert v. Michel, 364 So.2d 248 (La.App. 3rd Cir.1978), writ denied, 366 So.2d 917 (La.1979).
Since it is within the province of the jury to determine the facts from evidence presented and the jury cannot find a fact where there is no evidence to support the factual conclusion, it is within the judge's province to rule improper a hypothetical question predicated on facts unsupported by any evidence. Guerra v. Young Construction Company, 165 So.2d 882 (La. App. 4th Cir.1964), writ refused, 246 La. 864, 167 So.2d 676 (La.1964). The ruling of the trial court herein relative to the hypothetical question was proper.
TESTIMONY OF PLAINTIFF'S FORMER EMPLOYER
Plaintiff sought to introduce on rebuttal the testimony of Mr. Leo Carr, personnel director of Southern Scrap Company (Southern), a company that at one time employed plaintiff.
According to plaintiff the purpose of Mr. Carr's testimony was to rebut the medical testimony presented by the defendants by showing that plaintiff worked as a welder until April, 1985. Plaintiff argued that the testimony would show that plaintiff was not as injured prior to the accident as defendant's medical witness testified. The trial court refused to allow the testimony on rebuttal because defendants had presented no evidence relative to plaintiff's work at Southern.
Plaintiff proffered the testimony of Mr. Carr, who testified that plaintiff worked as a welder and that welding was strenuous work. Mr. Carr also testified that Southern required a pre-employment physical examination that included an x-ray of plaintiff's lumbar region. Although the x-ray was not proffered, Mr. Carr testified that a notation written on the x-ray read "lumbar spine, nothing abnormal is seen, congenital or acquired."
The defendants did not offer any testimony during their portion of the case dealing with plaintiff's pre-employment physical exam or any of plaintiff's other physical problems other than the x-rays of plaintiff's neck taken after the accident. All of *588 the physicians, including plaintiff's physician, agreed that plaintiff clearly had a preexisting arthritic condition which existed long before the accident. The defendant did not introduce any evidence regarding the plaintiff's employment at Southern or any other evidence regarding the plaintiff's employment prior to the accident.
Evidence in rebuttal should be confined to new matters brought out by the defendant. Longino v. Shreveport Traction Co., 120 La. 803, 45 So. 732 (1908). Rebuttal evidence is evidence that "has become relevant or important only as an effect of some evidence introduced by the other side." State v. Smith, 120 La. 530, 45 So. 415 (1908). Additionally, the matter of admission of rebuttal evidence is largely within the discretion of the trial judge. Lea v. Baumann Surgical Supplies, Inc., 321 So.2d 844 (La.App. 1st Cir.1975), writ denied, 325 So.2d 279 (La.1976). See also LSA-C.C.P. arts. 1631 and 1632. We do not find that the judge abused his discretion in this instance.
Accordingly, plaintiff's assignment of error number 2 is without merit.

MOTION FOR ADDITUR OR NEW TRIAL

(Assignment of Error No. 3)
Plaintiff contends that the trial court erred in denying plaintiff's motion for additur or, in the alternative, a new trial.
LSA-C.C.P. art. 1814, at all times pertinent hereto, provided:[1]

If the trial court is of the opinion that the verdict is so excessive or inadequate that a new trial should be granted for that reason only, it may indicate to the party or his attorney within what time he may enter a remittitur or additur. This remittitur or additur is to be entered only with the consent of the plaintiff or the defendant as the case may be, as an alternative to a new trial, and is to be entered only if the issue of quantum is clearly and fairly separable from other issues in the case. If a remittitur or additur is entered, then the court shall reform the jury verdict or judgment in accordance therewith. (Emphasis added)
Clearly, the granting of remittitur or additur rests solely within the discretion of the trial court. The article is applicable only when the trial court believes the verdict is excessive or inadequate. Additur and remittitur are available as an alternative to a new trial when the judge presiding over the jury trial is of the opinion that the verdict was so excessive [or inadequate] that a new trial should be granted for that reason only. Miller v. Chicago Insurance Company, 320 So.2d 134 (La.1975).
Additur and remittitur are intended to be substitutes for a new trial which may be granted where the verdict is clearly contrary to the weight of the evidence. See LSA-C.C.P. art. 1811, 1984 Revision Comments. Additionally, a jury verdict should not be increased absent a finding that the award is lower than the lowest reasonable amount. West v. Melancon, 507 So.2d 1250 (La.App. 4th Cir.1987), writ denied, 514 So.2d 128 (La.1987). In several recent cases the plaintiff suffered a cervical injury similar to the one plaintiff herein sustained, and awards similar to plaintiff's were upheld. Myres v. Nunsett, 511 So.2d 1287 (La.App. 2nd Cir.1987); Beard v. Republic-Vanguard Insurance Company, 509 So.2d 561 (La.App. 3rd Cir.1987); Brown v. Great Atlantic & Pacific Tea Co., Inc., 509 So.2d 557 (La.App. 3rd Cir. 1987); Brown v. Grigsby, 394 So.2d 847 (La.App. 3rd Cir.1981). In the instant case, the evidence supports the jury's award of $1,500 for past and future physical pain and mental suffering and $3,000 for lost wages.
This assignment of error is without merit.

QUANTUM

(Assignment of Error No. 4)
Plaintiff contends that the jury erred in assessing damages.
*589 Under LSA-C.C. art. 1934(3), now LSA-C.C. art. 1999, the quantum of damages for offenses and quasi-offenses are within the discretion of the trial court. Where a legal right to recover exists, but the damages cannot be exactly estimated, the trial court has reasonable discretion to assess such damages based on the facts and circumstances of the case. Berthelot v. Imes, 459 So.2d 1384 (La.App. 1st Cir.1984); National Roofing and Siding Company, Inc. v. Gulf Coast Oil Company of Mississippi, Inc., 422 So.2d 204 (La.App. 4th Cir.1982).
Before a court of appeal can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its discretion. Reck v. Stevens, 373 So.2d 498 (La.1979); Freeman v. Harold Dickey Transport, Inc., 467 So.2d 194 (La.App. 3rd Cir.1985). We must look first, not to prior awards, but to the individual circumstances of the present case. If we find that the trial court abused its much discretion, we are required to increase or reduce the award only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afford that court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
In the instant case, the jury awarded plaintiff the following damages:

(a) Past and future physical
 pain and mental suffering $ 1,500
 _____
(b) Past medical expenses 2,300
 _____
(c) Future medical expenses -0-
 _____
(d) Past lost wages 3,000
 _____
(e) Future lost wages -0-
 _____
 Total $ 6,800
 -------
 -------

Plaintiff contends that the awards made for pain and suffering and past lost wages are inadequate.
PAIN AND SUFFERING
Plaintiff testified at trial that he had severe injuries to his neck as a result of the accident and could no longer work. Plaintiff complained of weakness, dizziness, neck pain, and loss of feeling in his left arm. He stated that he could no longer attend church on a regular basis due to his accident and had to curtail other physical activities. Plaintiff's wife corroborated her husband's testimony as did the deacon from plaintiff's church. The director of a sports program for which plaintiff had worked as a volunteer testified that there was a "tremendous change" in plaintiff's physical activities after the accident. The director testified that plaintiff could no longer spar or run with the boxers.
Several medical witnesses testified regarding plaintiff's injuries. Most of the witnesses agreed that plaintiff suffered from degenerative arthritis, which pre-dated the accident. Drs. John A. Thomas, David S. Malen, Marvin D. Clifton, William A. Fisher, C.A. Martello, Robert Hall, and Moss M. Bannerman testified that the "spurs," which are the calcifications present in plaintiff's neck x-rays, would take years to form. Drs. Thomas, Fisher, Hall, and Bannerman testified that plaintiff's neck condition could possibly be a result of plaintiff's long time career as a boxer. Dr. Hall testified that there was no evidence of recent trauma in plaintiff's x-ray. Dr. Clifton thought that plaintiff's complaints of dizziness could have resulted from an old boxing injury.
Dr. Fisher diagnosed plaintiff's injury as a cervical sprain, which should have completely healed in 4-8 weeks. Dr. Thomas felt the injury from the accident would have healed in 2-6 weeks. Dr. Vogel, a neurosurgeon, testified that 95% of all of the people injured with a cervical sprain are well within 2-3 months.
Dr. Krishna G. Yalamanchili, the psychiatrist who treated plaintiff, testified that plaintiff suffered depression as a result of the pain caused by his automobile accident.
The finder of fact, be it judge or jury, should assess the credibility of witnesses, expert or lay, to determine the most credible and realistic evidence. In reaching conclusions, the finder of fact need not accept all of the testimony of any witness as being true or false and may believe and accept any part or parts of a witness's testimony and refuse to accept any other part or parts thereof. Holmes v. Southeastern Fidelity *590 Insurance Company, 422 So.2d 1200 (La.App. 1st Cir.1982), writ denied, 429 So.2d 133 (La.1983); Guidry v. Davis, 382 So.2d 250 (La.App. 3rd Cir.1980).
After weighing and evaluating all of the evidence, a jury is free to accept or reject the opinion expressed by experts. Lanus v. Gulf Wandes Corp., 470 So.2d 492 (La. App. 1st Cir.1985); Guidry v. Davis, supra. While we do not have the benefit of an explanation as to how the jury arrived at the specific damage awards, we can only conclude that the jury did not accept the entirety of the opinions expressed by plaintiff's witnesses. The jury's award for pain and suffering was not so unreasonable or inadequate as to constitute an abuse of discretion, in view of the fact that the jury was presented with conflicting versions of plaintiff's medical condition.
PAST LOST WAGES
Although Dr. William P. Culbertson, Jr. testified that plaintiff suffered past lost wages of $25,000.00 and future lost wages of $148,500.00, the jury only awarded plaintiff $3,000.00 for past lost wages. The jury, in refusing to award additional damages for future earnings, obviously determined that plaintiff did not sustain any permanent damages as a result of this accident and that plaintiff had fully recovered from his injury.
After a thorough review of the record, we cannot say that the jury's findings are manifestly erroneous.

CONCLUSION
For the above reasons, the trial court judgment is affirmed. Costs of this appeal are assessed against plaintiff.
AFFIRMED.
NOTES
[1] LSA-C.C. art. 1814 was repealed by Acts 1988, No. 452, § 1.